Nord Deutsche Insurance Company of Hamburg, Germany, Plaintiff, *v.* The John L. Dudley, Jr., Co., John L. Dudley, George E. Wood, John E. King, John H. Meyer and Lester Gunther, Defendants.

(Supreme Court, New York Special Term, August, 1918.)

Alien enemies — insurance companies — Trading with the Enemy Act of October 6, 1917, construed.

> The prosecution and the maintenance of suits by an alien enemy insurance company, so far as the same arise solely out of the business transacted within the United States under a license issued pursuant to the " Trading with the Enemy Act of October 6, 1917," will be construed as permitting such a corporation, when in liquidation, to proceed with actions designed to bring in assets growing out of its business transactions within the United States prior to the issuance of such a license.

Motion to permit an alien enemy insurance company to collect by suit insurance premiums.

Kellogg & Rose (L. Laflin Kellogg, of counsel), for plaintiff.

William Otis Badger (Joseph Thurlow Weed, of counsel), for defendant John E. King.

Supreme Court, August, 1918.     [Vol. 104.

Wm. F. S. Hart, for defendants John L. Dudley, Jr., Co., John L. Dudley and John H. Meyer.

Crisp, Randall & Crisp, for defendant Geo. E. Wood.

McAvoy, J.   The plaintiff corporation is concededly an alien enemy within the Trading with the Enemy Act of October 6, 1917. Heretofore this court restrained the prosecution of this action under the provisions of that act and the order enjoining further prosecution was affirmed on appeal. At the time of the presentation of argument on the hearings of the motion and the appeal the plaintiff was operating under a liquidating license from the alien property custodian, pursuant to the pro-. visions of the Trading with the Enemy Act, permitting it: "4. To receive payment of agents' balances, premiums, reinsurance premiums, return premiums, reinsurance claims, salvages and other accounts due.   5. To pay out any money authorized by the alien property custodian, or as hereinafter provided.   6. To receive money, security or other property due in respect of insurance or reinsurance business or other obligations entered into prior to the date of this license." Subsequently to the issuance of the stay by which further prosecution of the action was terminated a new license has been granted providing as follows: " (3) To collect and receive premiums, additional and excess premiums, agents' balances, and all claims and demands of whatever nature, including subrogation claims, which it now has or may hereafter have, and to collect and receive interest, dividends and all other returns on its deposits, securities and investments.   (6) To prosecute and maintain actions and suits now pending; to institute, maintain and prosecute actions and suits for the enforcement and protection of the rights of the company and/or its policyholders and the

enforcement of the powers granted by this license; and to defend actions or suits, brought against it, unless otherwise directed by the alien property custodian; to apply for and obtain bonds required in connection with judicial proceedings and to execute indemnity agreements in connection therewith." There is doubtless authority now to prosecute and maintain this suit, unless the Trading with the Enemy Act under which the alien property custodian assumes to act is itself inhibitive of the grant of such license and does not authorize the issuance of permission to prosecute and maintain suits pending. The sections of the act governing the issuance of licenses and the powers of an alien enemy corporation to operate in pursuance thereof provides that an enemy insurance company doing business within the United States may apply to the president for a license to continue to do business, and the license if granted may contain such provisions and conditions regulating the business and the control and disposition of the funds of the company as the president shall deem necessary for the safety of the United States. § 4, subd. a. In section 7, however, this authority is limited by the words, " Nothing in this Act shall be deemed to authorize the prosecution of any suit or action at law or in equity in any court within the United States by an enemy or ally of enemy prior to the end of the war, except as provided in section ten hereof: Provided, however, that an enemy or ally of enemy licensed to do business under this Act may prosecute and maintain any suit or action so far as the same arises solely out of the business transacted within the United States under such license." § 7, subd. b.

It is conceded that section 10 does not here apply, and the determination of this motion rests upon the construction to be given to the phrase " an action arising solely out of the business transacted within the United

States under such license," as it affects the suit here pending. The alien property custodian submits an affidavit on this motion in which he asserts that he considers it for the best interests of the United States to have all alien enemy insurance companies liquidated and their business here wound up, in order that American policyholders having losses may not be compelled to sue for each loss sustained. He says that should the alien property custodian take over the assets of a foreign insurance company, losses could not be paid under the provisions of the Trading with the Enemy Act except they be reduced to judgments. This condition arises from the fact that section 9 of the act permits a payment only with the assent of the owner of the property and of all persons claiming any right, title or interest therein. Since the owner of the property is the enemy corporation in Germany, and since conceivably every policyholder in the United States is interested in the funds, a payment under this provision, which is the only provision for voluntary payments in the law, is impossible. Following this policy, the alien property custodian views the collecting by suits or otherwise of premium balances due the company when such suits are brought and maintained under the license provided for by the Trading with the Enemy Act, and while the alien company's affairs are at all times under his supervision, as of great assistance in facilitating the liquidation of alien companies' affairs. If the business carried on under license is in liquidation and a suit be necessary in connection with such liquidation to bring in assets of the alien corporate enemy, it would seem that the suit may be said to arise " solely out of the business transacted within the United States under such license." The only other possible construction is that suits may be brought for such business transactions

as arise from the time liquidation begins until its end, or the revocation of the license, which would narrow the scope of the permission to an exceedingly small compass, since it is not likely that anything in the nature of new transactions will arise in the course of liquidation, excepting possibly the securing of offices, the employment of help, and contracts for services generally aiding the subject of liquidation itself. This should not be deemed by a court to be the sole business contemplated as being permitted under a license allowing prosecution and maintenance of suits unless the construction is forced by unequivocal words. Especially should the court lean toward a construction given to the provision by the administrative officer in charge of the execution of the provisions of the act, and I do not hesitate to adopt the view on my own judgment of the alien property custodian, as set forth in his affidavit, that the prosecution and maintenance of suits, so far as the same arise solely out of the business transacted within the United States under such license, should be construed as permitting the alien property custodian to allow an enemy alien corporation in liquidation to go forward with its actions designed to bring in assets growing out of its business transacted within the United States prior to the issuance of the license. The motion will be granted, and the order heretofore made when the license did not permit the company to prosecute and maintain its suits will be vacated.

Motion granted.